1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JEREMY DELPHIN,                           Case No.  1:19-cv-01076-SKO (PC)

12                  Plaintiff,                 **ORDER GRANTING DEFENDANTS'**
                                               **MOTION FOR SUMMARY JUDGMENT**
13          v.
                                               (Doc. 96)
14   J. MORLEY, et al.,

15                  Defendants.

16

17          Plaintiff Jeremy Delphin is a state prisoner proceeding pro se and *in forma pauperis* in this

18   civil rights action filed pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's Eighth

19   Amendment claims of excessive force and/or failure to intercede against Defendants Morley,

20   Villalobos, Banuelos, and Brown, and claims of deliberate indifference to serious medical needs

21   against Defendants Brown and Stewart.

22          **I.      RELEVANT BACKGROUND[1]**

23          On March 13, 2023, Defendants filed a motion for summary judgment, alleging Plaintiff

24   has failed to exhaust his administrative remedies. (Doc. 96.) Plaintiff filed an opposition on May

25   18, 2023 (Doc. 108), and Defendants filed a reply on May 30, 2023 (Doc. 109).

26

27   _____

[1] On March 21, 2023, this action was reassigned to the undersigned for all purposes with the issuance of
28   District Judge Jennifer L. Thurston's Order Reassigning Case. (*See* Doc. 102.)

On June 12, 2023, Plaintiff submitted a document titled "Opposition to Summary judgment and request for Evidentiary Hearing." (Doc. 114.) On June 22, 2023, Plaintiff submitted a document titled "Reply to Defendants Support of Motion for Summary Judgment and request for more Evidentiary Hearing." (Doc. 115.)

On June 23, 2023, the Court issued its Order Striking Plaintiff's Rebuttals to Defendants' Motion for Summary Judgment as Improper Surreplies and Order Denying Plaintiff's Motions for an Evidentiary Hearing Without Prejudice. (Doc. 116.)

On October 12, 2023, Plaintiff filed a document titled "Request for Ex Parte Application and Change of Address Notify." (Doc. 118.) On October 16, 2023, the Court issued its Order Denying Plaintiff's Ex Parte Application for An Extension of Time as Moot. (Doc. 119.)

**II.     SUMMARY OF FACTS**

**A.  The Allegations in Plaintiff's Complaint**

Plaintiff contends that on August 1, 2017, Defendants Morley and Villalobos approached his cell and ordered him to step out. (Doc. 1 at 8.) Defendant Hammonds[2], who was up in the "[t]ower," opened his cell door. (*Id.*) As Plaintiff was exiting, Morley and Villalobos "began [b]rutally [s]triking" him with their batons until he fell unconscious. (*Id.*) After Plaintiff regained consciousness, Hammonds sounded an alarm. (*Id.* at 13.) Defendants Banuelos and Brown responded, and they and Morley and Villalobos again beat Plaintiff with their batons, fists, and boots. (*Id.* at 9.) Plaintiff contends the baton strikes to his left arm caused the bone to pop out, "showing it was clearly broken." (*Id.*) The officers escorted Plaintiff to the clinic, and while being escorted to a holding cage, Morley and Villalobos started beating Plaintiff again until he again lost consciousness. (*Id.* at 10.)

Plaintiff alleges that at the clinic, Defendant Stewart advised the officers that Plaintiff needed to go to the hospital. (Doc. 1 at 9.) Plaintiff contends that Stewart did not comply with the decision to send Plaintiff to an outside hospital and allowed Defendant Brown to interfere. (*Id.* at 15.) Brown told Stewart he would not let Plaintiff be treated at an outside hospital. (*Id.*) Brown

---

[2] Plaintiff's claims against Defendants Hammonds and Whitson were dismissed on March 21, 2021. (Doc. 37; *see also* Doc. 45.)

held Plaintiff's arm and "pushed the bone back under the skin, so it would not be exposed," causing Plaintiff more pain. (*Id.*) Stewart and Brown failed to provide any relief for Plaintiff's pain during his stay in the clinic. (*Id.* at 15-16.) After Plaintiff was transported to the mental health facility in Stockton the following day, he was seen by medical personnel and was given a splint for his injured arm. (*Id.* at 10-11.) Three or four days later, Plaintiff was taken to a hospital where a doctor had to re-break and re-set his arm to allow it to heal properly. (*Id.* at 11.) Six months later, a specialist advised Plaintiff the bone was deformed and the arm was not healing properly, and another cast was applied. (*Id.*) Plaintiff underwent surgery on November 24, 2018; his arm was re-broken, and plates and screws were used to correct the condition of his arm. (*Id.*)

## B. Defendants' Statement of Undisputed Facts

Defendants submit the following separate statement of undisputed material facts:

1.  Plaintiff is a prison inmate currently housed at California State Prison, Sacramento.

2.  At all relevant times alleged in the Complaint, Plaintiff was in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and incarcerated at California Correctional Institution ("CCI").

3.  Plaintiff alleges that on August 1, 2017, Defendants Morley, Villalobos, Banuelos, and Brown used excessive force or failed to stop the excessive force of other Defendants [fn. omitted].

4.  The Complaint alleges that Defendants Morley and Villalobos beat Plaintiff in his cell and dragged Plaintiff, while Plaintiff was unconscious, to the dayroom. Then, Defendants Morley, Villalobos, Banuelos, and Brown beat Plaintiff with their batons, fists, and boots. When Defendant Stewart, a nurse, stated that Plaintiff needed to be transferred to an outside hospital, Defendant Brown beat Plaintiff.

5.  Plaintiff alleges that later the same day, on August 1, 2017, Defendants Stewart and Brown were deliberately indifferent to his serious medical needs.

6.  Plaintiff alleges that Defendant Stewart allowed Defendant Brown to intervene in her medical treatment of Plaintiff by listening to Defendant Brown when he told her not to send Plaintiff to an outside hospital for further treatment. Further, Defendant Brown

3

was deliberately indifferent to Plaintiff's serious medical needs when he pushed Plaintiff's bone under Plaintiff's skin.

7. At all times relevant to Plaintiff's allegations, CDCR had a comprehensive administrative appeal process whereby a prisoner under CDCR's jurisdiction could appeal any policy, decision, action, condition, or omission by CDCR or CDCR staff that had a material adverse effect upon the inmate's health, safety, or welfare.

8. As Plaintiff admits in the Complaint, the administrative grievance process was available to Plaintiff while he was housed at CCI. Plaintiff utilized this appeal process to file eight appeals while he was incarcerated at CCI.

9. During the relevant time, to exhaust claims related to an appeal for non-health care related issues, an inmate's appeal was required to go through three formal levels of administrative review.

10. A decision at the third level constituted the final decision for non-health care related appeals and exhausted the inmate's administrative remedies.

11. For health care related issues, an inmate was required to go through two levels of review: an institutional level of review and a headquarters level of review.

12. Health care grievances were subject to a headquarters' disposition before administrative remedies were deemed exhausted.

13. Between 2017 and 2018, while Plaintiff was incarcerated at CCI, Plaintiff submitted eight appeals.

14. Two appeals, log nos. CCI-0-17-03280 ("Original Appeal") and CCI-0-18-01797 ("Cancellation Appeal"), include allegations relevant to some of the allegations pled in the Complaint. During his deposition, Plaintiff testified that he did not submit any other appeals regarding Defendants.

15. On November 28, 2017, Plaintiff submitted the Original Appeal, alleging that on August 1, 2017, Defendants Morley and Banuelos and dismissed defendant Whitson, [fn. omitted] broke Plaintiff's arm and lied about breaking Plaintiff's arm in a Rules Violation Report. The [] Original Appeal did not mention any unidentified officers or

4

that any other correctional or medical staff were involved in the alleged misconduct.

16. During his deposition, Plaintiff also testified that, where he wrote "Villalobos" in the Original Appeal, he meant to write "Banuelos."

17. On December 15, 2017, Plaintiff was provided a CDC Form 695 notifying him that the Original Appeal had been cancelled for exceeding the time limits for submitting an appeal ("December Cancellation").

18. The December Cancellation noted that, pursuant to Title 15, § 3084.6(c)(4), Plaintiff had thirty days from the date he was aware of the appealable issue to submit a CDCR Form 602 appeal.

19. The December Cancellation noted Plaintiff was aware of the issue since August 1, 2017, yet Plaintiff waited more than thirty days to file his appeal, thereby violating Title 15's time constraints.

20. The December Cancellation was consistent with CDCR's administrative policies which state that an appeal may be cancelled where "[t]ime limits for submitting the appeal are exceeded even though the inmate or parolee had the opportunity to submit the appeal within the prescribed time constraints." Further, pursuant to Title 15, inmates had thirty calendar days to submit appeals, and if an appeal was submitted after the thirty-day time period, the appeal could be cancelled.

21. On February 20, 2018, the CCI Appeals Office received Plaintiff's response to the December Cancellation. In his response, Plaintiff stated that he was unable to meet the thirty-day time constraints because he was heavily medicated, transferred to acute care, the Psychiatric Inpatient Program, and intermediate care, "and was to the first of my knowledge to 602, Art 8, Sec. 3084."

22. On February 20, 2018, Plaintiff received a second CDC Form 695 regarding the December Cancellation of the Original Appeal, stating that the Original Appeal was being returned to Plaintiff ("February Screening").

23. The February Screening noted that the Original Appeal was cancelled on December 15, 201[7], yet Plaintiff's response was not received until February 20, 2018,

exceeding the thirty-day time constraints to respond. Further, the February Screening noted that Plaintiff failed to attach any proof of his alleged inability to submit an appeal within the time constraints and advised Plaintiff to review Title 15, § 3084. Importantly, Title 15 states that an appeal may be cancelled for failure to correct and return a rejected appeal within thirty calendar days of the rejection.

24. Plaintiff responded to the February Screening saying that he was submitting 602s as to other issues and had to wait two weeks while he submitted the other 602s.

25. Plaintiff never appealed the Original Appeal to the Office of Appeals and therefore did not receive a Third Level Decision for the Original Appeal.

26. On July 16, 2018, pursuant to Title 15 § 3084.6(e), Plaintiff [submitted] an appeal grieving the cancellation of the Original Appeal (the Cancellation Appeal). In the Appeal, Plaintiff claimed that his Original Appeal was late because he was in a crisis bed and lacked access to a pen to write a 602 in a timely manner. The appeal also requested that Defendants Brown, Banuelos, Morley, and Villalobos take a polygraph and drug test, and to get help for their "violent behavior."

27. Included in the Cancellation Appeal was a copy of a letter from a Clinical Social Worker, dated May 15, 2018, stating that Plaintiff was admitted to the Psychiatric Inpatient Program's Acute unit from August 2, 2017, to October 7, 2017, during which time Plaintiff was placed on maximum custody and, in terms of writing materials, Plaintiff was only provided crayons. The letter from the Clinical Social Worker also stated that, on October 7, 2017, Plaintiff was transferred to an intermediate care facility and his max custody status was removed on November 22, 2017.

28. Plaintiff also submitted three CDCR Form 22s "Inmate/Parolee Request for Interview, Item or Service" ("Form 22") with the Cancellation Appeal.

29. One Form 22, received on June 5, 2018, inquired "about the process of [his] 602 excessive force at Tehachapi." Staff responded on June 12, 2018, asking for more information regarding the incident.

30. A second Form 22, received on July 12, 2018, requested a copy of the Original

Appeal. Staff responded on July 26, 2018, stating Plaintiff needed to submit a trust withdrawal to his counselor at his prison.

31. Staff received a third Form 22 on August 7, 2018, requesting a copy of the Original Appeal. Staff responded on August 13, 2018, stating he didn't see Plaintiff's appeal in his file.

32. On July 24, 2018, Plaintiff was provided a CDC Form 695 advising him that the Cancellation Appeal was rejected and being returned to Plaintiff because it was missing necessary supporting documents, pursuant to Title 15, § 3084.3 ("July Rejection").

33. The July Rejection advised Plaintiff that he could obtain copies of requested documents by sending a request with a signed trust withdrawal form to his assigned counselor.

34. Further, the July Rejection specifically identified that the Cancellation Appeal was missing the Original Appeal, as well as proof for his delay in filing the Cancellation Appeal.

35. On September 16, 2018, Plaintiff responded, on the 602 form for the Cancellation Appeal, stating that he had "a lot of 602s submitted for different issues which caused a long time to submit a 602 in this case."

36. Plaintiff also wrote that he needed to wait fourteen calendar days between his appeals and that he was constantly being transferred, causing him to have to wait for property.

37. Then, on September 24, 2018, Plaintiff responded to the July Rejection saying he "didn't find out till 22 form on 6-20-18 because CCI-17-03280 was never given back to me, I bar[e]ly got the copies of the 602 on 9-5-18 because Counselor Garza."

38. On October 8, 2019, Plaintiff was provided a second CDC Form 695 ("October Screening") stating that Cancellation Appeal was being returned to Plaintiff.

39. The October Screening noted that, though Plaintiff was provided instructions regarding the appeal on July 24, 2018, Plaintiff did not resubmit his appeal until sixty-two days later. The October Screening also stated that Plaintiff did not follow

1   instructions from the July Screening.

2   40. The October Screening advised Plaintiff that if he had a valid explanation for his

3   delay, he could indicate as such. The bottom of each CDCR Form 695 states that

4   where an inmate is required to respond or explain to the CDCR Form 695, the inmate

5   must use the four lines provided to write such a response or explanation.

6   41. Plaintiff responded to the October Screening, stating that he was transferred

7   institutions and had to wait for his property, and then he was sent to the wrong

8   housing, causing him to wait for property again. Further, Plaintiff responded that he

9   had four other appeals, and had to wait fourteen calendar days.

10  42. On November 14, 2018, Plaintiff was provided a third CDC Form 695 ("November

11  Cancellation").

12  43. The November Cancellation stated that the Cancellation Appeal was being cancelled

13  and returned to Plaintiff, pursuant to [] for failure to correct and return a rejected

14  appeal within thirty calendar days of the rejection.

15  44. The November Cancellation noted that Plaintiff failed to provide a justification for his

16  delay in resubmitting the Cancellation Appeal within thirty calendar days of the

17  rejection (July 24, 2018). Here, Plaintiff's response to the July Rejection was not

18  received until September 24, 2018, such that his response was untimely and the first

19  level cancelled the Cancellation Appeal, after giving Plaintiff two opportunities to

20  remedy the identified deficiencies. The November Cancellation noted that Plaintiff

21  was transferred and sent to the wrong housing did not justify his delay because

22  Plaintiff was still housed in CDCR custody.

23  45. Plaintiff responded to the November Screening. As best as can be deciphered, Plaintiff

24  responded that the delay was due to him barely receiving his property, including

25  supporting documents, until September 21, 2018, and because he had to wait for

26  committee and he had to wait fourteen days to submit the appeal due to Title 15, §

27  3084.3(c)4 and § 3084.4(a)(1). [Fn. omitted.] However, Title 15, §3084.4(a)(1) only

28  applies to initial appeals, such that Plaintiff did not need to wait fourteen days before

8

responding to the November Cancellation of the Cancellation Appeal.

46. On December 14, 2018, the Office of Appeals received the Cancellation Appeal.

47. On February 11, 2019, the Office of Appeals sent Plaintiff a letter, screening out the appeal and advising Plaintiff that the Office of Appeals examines and responds to appeals after the second level responds.

48. The Office of Appeals noted that Plaintiff improperly attempted to submit a previously cancelled appeal and advised him that, pursuant to Title 15, § 3084.4, Plaintiff's actions constituted a misuse or abuse of the appeals process.

49. Finally, the Office of Appeals advised that a separate appeal could be filed on the cancellation decision, within thirty days of the screen out form cancelling the appeal, and that the original appeal could be resubmitted only if the appeal on the cancellation was granted.

50. In his deposition, Plaintiff testified that he received a Third Level Decision for the Cancellation Appeal. However, by "Third Level Decision," Plaintiff was referring to the screen out letter from the Office of Appeals, which did not constitute a Third Level Decision.

51. Plaintiff did not receive a Third Level Decision for the Cancellation Appeal.

52. Plaintiff did not submit any other appeals attempting to appeal the cancellation of the Original Appeal.

53. Plaintiff did not submit any appeals as to Defendants Villalobos, Brown, or Stewart regarding his allegations against them and therefore did not receive any Third Level Decisions as to them.

54. During his deposition, Plaintiff testified that he intended to amend the Original Appeal to add Defendants Villalobos and Brown once he got more information regarding their names, but never amended the Original Appeal to include their names.

55. At different points during his deposition, Plaintiff testified that he either did not submit a grievance as to Defendant Stewart, thinking his excessive force appeal would apply to Defendant Stewart, or that he may have submitted such an appeal, but was not

1     sure.

2     56. Defendant Stewart served a written discovery request, via personal service, for

3          Plaintiff to produce any and all documents supporting his contention that he exhausted

4          his available administrative remedies, related to his allegations in the Complaint.

5     57. Plaintiff's responses were due on March 9, 2023.

6     58. As of the date of the instant motion [3/13/23], Plaintiff has not served his response.

7     (Doc. 96-1, hereafter "UDF.")

8     **III.**    **LEGAL STANDARDS**

9     **A. Summary Judgment**

10    Summary judgment is appropriate when the moving party "shows that there is no genuine

11   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

12   Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine

13   issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing

14   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by

15   "citing to particular parts of materials in the record, including depositions, documents,

16   electronically stored information, affidavits or declarations, stipulations …, admissions,

17   interrogatory answers, or other materials," or by showing that such materials "do not establish the

18   absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

19   evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears

20   the burden of proof at trial, "the moving party need only prove that there is an absence of

21   evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*,

22   477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

23    Summary judgment should be entered against a party who fails to make a showing

24   sufficient to establish the existence of an element essential to that party's case, and on which that

25   party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of

26   proof concerning an essential element of the nonmoving party's case necessarily renders all other

27   facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted,

28   "so long as whatever is before the district court demonstrates that the standard for the entry of

summary judgment … is satisfied." *Id.* at 323.

**B.  Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). The exhaustion requirement applies to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or offered by the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is an affirmative defense, which the defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant bears the burden of producing evidence that proves a failure to exhaust; and, summary judgment is appropriate only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

On a motion for summary judgment, the defendant must prove (1) the existence of an available administrative remedy and (2) that the plaintiff failed to exhaust that remedy. *Albino,* 747 F.3d at 1172 (citation omitted). If the defendant meets this burden, the plaintiff then "has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (citation omitted). "However, … the ultimate burden of proof remains with the defendant." *Id.*

An inmate "need not exhaust unavailable [remedies]." *Ross v. Blake*, 578 U.S. 632, 642 (2016). An administrative remedy is unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end with officers unable or consistently

unwilling to provide any relief to aggrieved inmates"; or when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use, [i.e.,] some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate [the mechanism]"; or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643-44.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), *overruled on other grounds* by *Albino*, 747 F.3d at 1168-69. "If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge." *Albino*, 747 F.3d at 1170. If the court finds that remedies were not available, the prisoner exhausted available remedies, or the failure to exhaust available remedies should be excused, the case proceeds to the merits. *Id*. at 1171.

### C. CDCR Grievance Process

The CDCR has an administrative grievance system for prisoners to appeal a policy, decision, action, condition, or omission by the department or staff if it has an adverse effect on prisoner health, safety, or welfare. Cal. Code Regs. tit. 15, § 3084.1(a). Compliance with 42 U.S.C. § 1997e(a) requires California state prisoners to utilize CDCR's grievance process to exhaust their claims prior to bringing suit in court. *See Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010); *see also Woodford*, 548 U.S. at 85-86. In 2017 and 2018, administrative grievances were subject to three levels of review before the remedy was deemed exhausted. Cal. Code Regs. tit. 15, § 3084.1(b); *see also Sapp*, 623 F.3d at 818.

### IV.   EVIDENTIARY MATTERS

Plaintiff has failed to properly respond to Defendants' Statement of Undisputed Facts in support of the motion for summary judgment. Plaintiff was served with a *Rand* warning that included the following language: "In opposing Defendants' motion for summary judgment, Local Rule 260(b) requires Plaintiff to reproduce Defendants' itemized facts in the Statement of Undisputed Facts and admit those facts which are undisputed and deny those which are disputed.

1  If Plaintiff disputes (denies) a fact, Plaintiff must cite to the evidence used to support that denial

2  (e.g., pleading, declaration, deposition, interrogatory answer, admission, or other document).

3  Local Rule 260(b)." (*See* Doc. 103 at 3, ¶ 6 [Second Informational Order-Notice And Warning Of

4  Requirements For Opposing Defendants' Summary Judgment Motion].)

5    Plaintiff neither reproduced Defendants' itemized facts, nor admitted or denied those

6  facts. (*See* Doc. 108.) Because Plaintiff has not complied with Rule 260(b), the Court deems

7  Plaintiff to have admitted those facts. *See, e.g*., *Beard v. Banks*, 548 U.S. 521, 527 (2006) ("by

8  failing specifically to challenge the facts identified in the defendant's statement of undisputed

9  facts, [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's]

10  statement."); *Brito v. Barr*, No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *6 (E.D. Cal.

11  July 15, 2020) (deeming defendant's undisputed facts as admitted after plaintiff failed to comply

12  with Local Rule 260(b)); *see also Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). Where

13  Plaintiff's verified complaint or evidence submitted in support of his opposition to Defendants'

14  motion for summary judgment bring Defendants' proffered facts into dispute, the Court considers

15  the complaint and any evidence. *Jones*, at 923 (the court considers as evidence those parts of the

16  verified complaint based on plaintiff's personal knowledge).

17     **V. SUMMARY OF THE PARTIES' POSITIONS**

18     *Defendants' Motion*

19    Defendants contend Plaintiff did not submit any grievance or appeal regarding his

20  allegations against Defendants Brown, Stewart, or Villalobos. (Doc. 96 at 17.) Defendants

21  contend the undisputed evidence shows that Plaintiff failed to provide adequate notice regarding

22  his allegations of excessive force or failure to intervene as to Defendants Brown and Villalobos

23  because Plaintiff did not submit any grievances or appeals identifying them or their conduct.

24  Defendants further allege Plaintiff failed to submit any grievances or appeals as to Defendants

25  Brown and Stewart regarding his allegations of deliberate indifference to serious medical needs.

26  (*Id*. at 18-20.)

27    Defendants also allege that Plaintiff failed to exhaust his administrative remedies with

28  regard to Defendants Banuelos and Morley because he did not receive a third level decision

1    regarding his grievances or appeals involving those Defendants. (Doc. 96 at 20.)  Defendants next

2    allege Plaintiff's related appeals were properly screened out, and do not demonstrate

3    unavailability that would excuse Plaintiff's failure to exhaust. (Doc. 96 at 20-24.)

4          Finally, Defendants request that an *Albino*[3] hearing be set should this Court find a dispute

5    of material fact exists concerning the issue of exhaustion.

6                          ***Plaintiff's Opposition*[4]**

7          Plaintiff contends he was "not provided a grievance" in order to exhaust his administrative

8    remedies. (Doc. 108 at 1.) He states he was housed in a crisis bed without access to "paper, pen or

9    grievance" and that when he obtained a pen, correctional officers at the California Health Care

10   Facility ("CHCF") refused to provide him with a grievance. (*Id*.) Plaintiff also contends he was

11   heavily medicated, and those "extraordinary circumstances" prevented him from complying with

12   the relevant deadline. (*Id*.)

13         Plaintiff alleges CHCF officers told him administrative remedies were not available in the

14   crisis bed unit and when Plaintiff asked for assistance from CHCF physicians, they refused to

15   provide a grievance. (*Id*. at 1-2.) Plaintiff contends the actions by CHCF officers were taken to

16   "shield" officers "from personal liability violating the Supremacy Clause." (*Id*. at 2.) Plaintiff

17   states he has "sent ten request[s] about grievance process, 30 day extension, and lost grievance

18   and lost request of 30 day extensions." (*Id*.) Plaintiff states that while he "was at crisis bed the

19   C.O.s made the grievance process unavailable." (*Id*. at 2-3.) Plaintiff alleges he "had to wait till

20   C.O.s wanted to give a grievance, so C.O.s interrupted the grievance process and the grievance

21   was reserved until after [expiration] of time constraints." (*Id*. at 3.)

22         Plaintiff next contends he was "thwarted by improper screening because of the grievances

23   ───────────────

24   [3] *Albino v. Baca*, 474 F.3d 1162, 1170-71 (9th Cir. 2014).

25   [4] Plaintiff twice states that the Court can view certain "camera footage" or listen to "audio" from the
     facility that will prove the unavailability of the administrative remedy. (*See* Doc. 108 at 2, 3.) It is not the

26   Court's duty to obtain evidence for any party. If Plaintiff believes video or audio recordings would support
     his claims or argument here, his obligation was to obtain that evidence and submit it to the Court for

27   consideration. The Court notes it issued its Discovery and Scheduling Order ("D&SO") on July 14, 2022.
     (Doc. 81.) The D&SO was modified three times (*see* Docs. 85, 87, 91) and the deadline for the completion

28   of all discovery was May 15, 2023 (*see* Doc. 91 at 3).

kept getting [lost] or thrown away when [he] sent for a response." (Doc. 108 at 3.) He alleges the "C.O.s lied about the address" being wrong and advised him the "mailroom throw away grievance." (*Id*.) Plaintiff states "C.C.I appeals never responded" to his numerous requests for copies of missing grievances and to his extension requests. (*Id*. at 3-4.) Plaintiff contends mail was delayed, that "because of plaintiff change of address that time constraints were violated," and that because "all forms of requesting for 30 day [extension] are not on the file [that shows] that C.O.s never turned it in." (*Id*. at 4.) Plaintiff states he "felt he was at a dead end." (*Id*.) He contends he went "the grievance and a note to Chief of Appels with a letter asking Chief of Appeals to send the grievance to CCI appeal's proper address." (*Id*.) Plaintiff also states he "turned in a medical grievance but [it] was never given back to" him. (*Id*.) Despite making "about ten requests about [the] medical grievance," he received no response to the requests and the medical grievance "turned up missing from Plaintiff's property and from administrative file, so it was probably thrown away." (*Id*. at 5.) Plaintiff asserts the grievance process was made hard to understand because C.C.I.'s responses "were short and [they] never got back at Plaintiff's request and only filing a blank response." (*Id*.) Plaintiff states that "[i]t is known that correctional officers can defeat an inmate's civil action by throwing away grievance." (*Id*.)

Plaintiff requests an evidentiary hearing "so courts can review camera footage" from CHCF between August 2, 2017, and August 9, 2017. (Doc. 108 at 5.) Plaintiff states "please be aware that C.O.s tampering of camera footage by stopping and starting video as if to say the C.O. is stratched" and that he is "missing more for [his] discovery due to C.O.s taking out and throwing it away." (*Id*. at 6.)

Plaintiff submitted Exhibits A through Z and "A-2" through "H-2" in support of his opposition. (Doc. 108 at 8-50.) The exhibits consist of copies of documents associated with his grievances or appeals accompanied by Plaintiff's handwritten notes or entries.

### Defendants' Reply

Defendants contend administrative remedies were available to Plaintiff, his supporting exhibits are "of unauthenticated, improperly altered records containing handwritten notes of argument in an attempt to establish that administrative remedies were unavailable to him" but the

undisputed evidence shows otherwise, his inadmissible evidence does not create a dispute of material fact and does not demonstrate unavailability, and that his grievances or appeals were properly screened out. (*See* Doc. 109.)

## VI.    DISCUSSION

The Court begins with a description and procedural background for the two grievances or appeals relevant to the claims asserted in this action.

### Log No. CCI-0-17-03280

Log No. CCI-0-17-03280 is dated November 28, 2017. (Doc. 96-4 at 97-100.) Explaining his issue, Plaintiff wrote:

> 2nd shift J. Morley, Whitson and Villabos broke my arm and lied about it on report. I told them my arm was broken and they used mechanical restraints as punishment that made my bone pop out of my skin. They did not want to do a polygraph examination. There was no legitimate reason or purpose. Immediate use of force. This happen on 8.1.17.

(*Id*. at 99.)

In a first level screening letter dated December 15, 2017, returning Plaintiff's documents, Plaintiff was advised his appeal had been cancelled as untimely pursuant to section 3084.6(c)(4). (Doc. 94-4 at 96.) The screening letter stated, "due to exceeding time constraints in appealing this issue; you will not be afforded a written response. You are filing an appeal on an issue you have been aware of since 8/1/17. On 8/2/17 you were transferred to CHCF and remain there. You had 30 days from the date of incident to file an appeal. You have violated time constraints." (*Id*.)

Plaintiff replied using the space provided at the bottom of the screening letter, explaining:

> I was not able to meet the 30 day time constraints because I was heavily medicated, [transferred] to [acute] and PIP also [intermediate] and was to the first of my knowledge to 602. Art 8, sec 3084

(Doc. 96-4 at 96.) Plaintiff's reply was received by the institution on February 20, 2018. (*Id*.)

In a first level screening letter dated February 20, 2018, Plaintiff's documents were returned to Plaintiff with the following statement: "Your appeal was cancelled on 12/15/18 and was not received to the CCI appeals office until 2/20/18. Well over the 30 days you had to file an

1    appeal on the [cancellation]. You are claiming that you were incapable of doing an appeal but

2    have not attached any proof of this. Before filing an appeal you should review CCR Title 15,

3    Section 3084." (Doc. 96-4 at 95.)

4                               **Log No. CCI-0-18-01797**

5         Log No. CCI-0-18-01797 is dated July 16, 2018. (Doc. 96-4 at 110-113.) Explaining his

6    issue, Plaintiff wrote:

7         I am appealing cancellation due to time [constraints] because I was
          in crisis bed and had no access to a pen to write a 602 in a [timely]
8         manner

9    (*Id.* at 112.)

10        In a first screening letter dated July 24, 2018, Plaintiff's documents were returned to him

11   for the following reasons: (1) the appeal was rejected pursuant to section 3084.6(b)(7) and (2) the

12   appeal was missing necessary supporting documentation pursuant to section 3084.3. (Doc. 96-4 at

13   114.) The letter also states: "When filing an appeal on a [cancellation] you need to attach the

14   original appeal. You are claiming that you were in MHCB and could not file an appeal. However,

15   the documents you attached show you were released on November 22, 2017. Attached original

16   appeal and attach proof of your delay in filing appeal." (*Id.*)

17        Plaintiff expressed his dissatisfaction with the first level response on September 16, 2018,

18   and replied:

19        I have a lot of 602's submitted for different issues which caused a
          long time to submit a 602 in this case. You need 14 calendar days
20        period. All my original appeal was never given back to me. I am
          constantly getting [transferred] and have to go through orientation
21        waiting for my property. Art 8 sec 3084.2(h)(6), Art 8 3084.3(d), Art
          sec 3084.6(c)(4). It was because of CHCF-B-18-0388, Sac B-16-
22        03798, Sac 18-00918, Sac 18-00687. I also don't want to go back to
          CCI Tehachapi ever not even for court. I also want C.O.s Brown, E.
23        Banuelos, Morley, T. Villalobos to take a polygraph test and drug
          test after and some type of anger management. Compensation for
24        pain and suffering.

25   (Doc. 96-4 at 113.)

26        On October 8, 2018, Plaintiff's documents were returned with the following notation: "1.

27   CCI-018-01797 was screened back to you on July 24, 2018 with instructions to follow however

28   you did not resubmit your appeal to SAC appeals to be forwarded to CCI until when SAC

                                          17

1   received the appeal on 09-24-18; 62 days later. 2. If you have a valid explanation for delay in

2   filing, you may indicate such. 3. Further, you have not followed instructions within the CDCR

3   695 from CCI dated 07-24-18." (Doc. 96-4 at 109.)

4       Plaintiff responded to the October 2018 screening letter as follows:

5           I was transferred from Stockton C.H.C.F. to Sac and had to wait for
            my property than I was sent to the wrong housing A-7 and had to
6           wait for property again. I also had other appeals I sent in and had to
            keep waiting the 14 calendar day for them. C.H.C.F. B-18-0388, Sac
7           B-16-03798, Sac B-00918, Sac 18-605

8   (Doc. 96-4 at 109.)

9       On November 14, 2018, Plaintiff's documents were returned and he was advised his

10  appeal was cancelled pursuant to section 3084.6(c)(10) for a failure to correct and return a

11  rejected appeal within 30 days. (Doc. 96-4 at 108.) The letter further stated: "You failed to

12  resubmit your appeal within the 30 calendar days from when it was screened back to you. This

13  appeal was screened back to you on: 07-24-18 and was not re-received in SAC Inmate Appeals to

14  be forwarded to CCI Appeals until: 09-24-18; 62 days later. The explanation you have provided

15  does not justify a reasonable reason for delay as you were housed within CDCR custody the

16  entire time." (*Id.*)

17                          **Analysis**

18      As set forth below, Defendants have met their initial burden of proving the existence of an

19  available administrative remedy and Plaintiff failed to exhaust his remedies. *Albino*, 747 F.3d at

20  1172; *see also* UDF Nos. 7-12; Doc. 96-5; Doc. 96-6.

21      Defendants contend Plaintiff did not submit any appeals as to Defendants Brown, Stewart,

22  or Villalobos. (Doc. 96 at 17-20.)  Defendants allege the undisputed evidence shows Plaintiff

23  failed to provide adequate notice to CDCR concerning his allegations of excessive force or failure

24  to intervene regarding Defendants Brown and Villalobos or his allegations of deliberate

25  indifference by Defendants Brown and Stewart because he failed to submit any grievances or

26  appeals identifying them or describing their conduct. (*Id.* at 18; UDF Nos. 51-52.)

27

28

                                    18

The Court concludes Plaintiff did not submit any appeals concerning Brown and Stewart.[5] Regarding Defendant Brown, neither Log No. CCI-0-1703280, nor Log No. CCI-0-1801797 make any mention of Defendant Brown. (*See* Doc. 96-4 at 97-100 [Exhibit E] & 96-4 at 110-113 [Exhibit G].)  During his deposition, Plaintiff also agreed that the Log No. CCI-0-17-03280 refers only to Morley, Whitson, and Villalobos. (Delphin Depo., at 129-130.) Plaintiff testified he "intended to add Banuelos and Brown" but "didn't have their names." (*Id*. at 132.) When asked whether he ever included that information, Plaintiff replied, "No." (*Id*.)

Regarding Defendant Stewart, neither Log No. CCI-0-1703280, nor Log No. CCI-0-1801797 make any mention of Stewart. (*See* Doc. 96-4 at 97-100 [Exhibit E] & 96-4 at 110-113 [Exhibit G].) During Plaintiff's deposition, the following colloquy occurred regarding Plaintiff's claim against Stewart:

> Q.  Did you ever file a 602 related to Nurse Stewart?
>
> A.  No. Wait. No.
>
> Q.  Okay. I'm sorry, I cut you off.  What did you say?
>
> A.  No.
>
> Q.  Okay. So the two grievances that you - - you only filed two grievances related to your allegations against defendants in this Complaint, correct?
>
> A.  Correct.
>
> Q.  And in those two grievances you acknowledge that you did not, um, refer to any allegations against Defendant Stewart, correct?
>
> A.  Right.
>
> Q.  So you did not file any 602s against Nurse Stewart, correct?
>
> A.  I'm not sure. I might have. I'm not sure.
>
> Q.  Okay. If you later find that grievance, will you please produce a copy of it to me?
>
> A.  Okay.
>
> Q.  Okay. Is it your contention though that if you did not file a 602

---

[5] Nor was any health care grievance was submitted by Plaintiff between August 1, 2017 (incident date) and May 7, 2019 (date complaint filed). (*See* Doc. 96-6 at 3, ¶ 9 [Gates Decl.].)

1

against Nurse Stewart, you did not exhaust administrative remedies as to Nurse Stewart?

2

A.  Well, I thought, um, applying the excessive force would apply to him.

3

Q.  Got it. So if you didn't file a 602 against Nurse Stewart, your reasoning was you thought that your excessive force allegations against the other four Defendants covered your allegations against Nurse Stewart for deliberate indifference?

4

5

6

A.  Yes.

7

8

(Delphin Depo., at 136-138.) Defendants' undisputed evidence establishes that Plaintiff did not

9

name Defendant Stewart in any grievance or appeal, and Plaintiff offers no evidence to the

10

contrary. At his deposition, Plaintiff initially agreed that he did not name Stewart, then testified

11

he was not sure, and later stated he "thought" the reference to "excessive force would apply" to

12

Stewart. Plaintiff's mistaken belief is unavailing. *See, e.g.*, *Cortinas v. Vasquez*, No. 1:19-cv-

13

00367-JLT-SKO (PC), 2022 WL 16748864, at *12 (E.D. Cal. Nov. 7, 2022) (finding excessive

14

force grievance did not serve to exhaust administrative remedies as to plaintiff's sexual assault

15

claim because excessive force grievance made no mention of sexual assault or misconduct).

16

There is nothing in either Log No. CCI-0-1703280 or Log No. CCI-0-1801797 to give the

17

CDCR notice that Plaintiff was contending Defendants Brown and Stewart were deliberately

18

indifferent to his serious medical needs. *McClure*, 246 F.Supp.3d at 1291; *Estrada v. California*

19

*Correctional Institution,* No. 1:18-cv-00599-AWI-SAB (PC), 2021 WL 3268555, at *6-8 (E.D.

20

Cal. July 30, 2021) (Defendant Bounville not identified in original grievance, nor did plaintiff file

21

administrative appeal against Bounville; "Plaintiff has failed to exhaust the administrative

22

remedies as to Bounville").

23

Plaintiff's opposition states he "turned in medical grievances but medical appeals

24

coordinator has [not] gotten back at plaintiff even when plaintiff has requested about the medical

25

grievance about 10 time to appeals coordinator not getting proper treatment from Defendant

26

Swart [sic]. All the request and medical grievance turned up missing or thrown away." (Doc. 114

27

at 5.) Defendants have submitted evidence to establish that Plaintiff did not submit any health

28

care grievances concerning Defendants Brown or Stewart following this incident. (*See* Doc. 96-

6.) Plaintiff has provided no evidence to support his assertions that he submitted a grievance involving Defendants Brown or Stewart. Vague and conclusory allegations are insufficient to create a genuine dispute of material fact. *See Sapp*, 623 F.3d at 823-24 (plaintiff bears burden of demonstrating exception to exhaustion requirement based on prison officials' misconduct thwarted attempts to exhaust remedies); *Penn v. Lucas*, No. 1:18-cv-01482-AWI-HBK (PC), 2022 WL 17669951, at *6 (E.D. Cal. Dec. 14, 2022) (recommending summary judgment be granted because "[a]side from conclusory allegations, Plaintiff presents no evidence to substantiate his conclusory claims that prison official's refusal to file his grievances thwarted the process"), recommendations adopted (E.D. Cal. Apr. 7, 2023); *Jeffries v. Fields*, 2014 WL 994908 * 18 (C.D. Cal. March 10, 2014) (stating conclusory allegations are insufficient to demonstrate that failure to exhaust was excused by prison officials' misconduct).

Plaintiff offers only self-serving statements to support his contention that his grievances were lost or otherwise not considered. This is insufficient to raise a genuine issue of material fact. *Rodgers v. Reynaga*, No. CV 1-06-1083-JAT, 2009 WL 2985731, at *3 (E.D. Cal. Sept. 16, 2009) ("To grant Plaintiff an exception to PLRA's demand for exhaustion based solely on Plaintiff's self-serving testimony that his grievance was surreptitiously destroyed by prison officials would completely undermine the rule."); *Avery v. Virga*, No. 2:11-cv-1945-KJM-EFP (TEMP), 2016 WL 3548799, at *9, (E.D. Cal. June 24, 2016) (plaintiff's claim without further evidence that a mailroom officer caused his grievance to be lost did not show a genuine issue of material fact as to exhaustion).  Plaintiff's assertions that his numerous requests for information were ignored is also belied by this record. *See, e.g.*, UDF Nos. 28-31.

Regarding Defendants' assertion that Plaintiff did not submit any appeals regarding his allegation against Defendant Villalobos, the Court notes Plaintiff's grievance Log No. CCI-0-1703280, regarding the use of excessive force includes Defendant Villalobos, or as Plaintiff wrote "Villabos." (*See* Doc. 96-4 at 97.) During his deposition, Plaintiff testified that the grievance refers only to Morley, Whitson, and Villalobos. (Delphin Depo., at 129-130.) Plaintiff testified he "got Villalobos and Banuelos mixed up." (*Id*. at 131.) Plaintiff also testified he "intended to *add* Banuelos and Brown" but "didn't have their names" and did not add them. (*Id*. at 132, emphasis

added.) Regardless of any confusion concerning the Villalobos and Banuelos surnames, the Court

finds Plaintiff's grievance provided adequate notice of his excessive force claim against

Defendant Villalobos. *Sapp*, 623 F.3d at 824.

Plaintiff failed to administratively exhaust his claims against Defendants Banuelos,

Morley, and Villalobos, because he did not receive any third level decision. *Woodford*, 548 U.S.

at 88, 93 (a plaintiff must complete the administrative review process prior to filing suit); *Sapp*,

623 F.3d at 818 (all levels of the grievance process must be exhausted prior to filing suit).[6]

As Defendants have established, neither Log No. CCI-0-1703280 nor Log No. CCI-0-

1801797 received a third level determination. *See* UDF Nos. 25 & 51. Plaintiff's attempt to obtain

third level review regarding Log No. CCI-0-1801797 was not successful because he attempted to

thwart proper grievance procedure by skipping the second level review. *See* UDF Nos. 46-48.

Based on the record, the Court concludes that Plaintiff did not complete the grievance process.

To the extent Plaintiff testified at his deposition that he did receive a third level decision

regarding the events giving rise to his claims, Plaintiff's testimony does not create a genuine issue

of material fact. While Plaintiff testified that he received a third level appeal response (*see*

Delphin Depo., at 123, 138, 144), other testimony provided (*see id*. at 140-142, 145) and

Defendants' supporting exhibits establish that Plaintiff's belief is mistaken. And as noted above,

Plaintiff's contention that his grievances were lost or otherwise not filed are supported by only

self-serving statements. Self-serving statements are insufficient to raise a genuine issue of

material fact. *Rodgers*, 2009 WL 2985731, at *3; *Avery*, 2016 WL 3548799, at *9.

To the extent Plaintiff contends his grievances or appeals were improperly screened out,

the Court does not agree. "[I]mproper screening of an inmate's administrative grievances renders

administrative remedies 'effectively unavailable' such that exhaustion is not required under the

PLRA. If prison officials screen out an inmate's appeals for improper reasons, the inmate cannot

pursue the necessary sequence of appeals, and administrative remedies are therefore plainly

unavailable." *Sapp*, 623 F.3d at 823. "To fall within this exception, a prisoner must show that he

---

[6] During his deposition, Plaintiff acknowledged a third level determination was required prior to filing suit. (Delphin Depo., at 144-145.)

attempted to exhaust his administrative remedies but was thwarted by improper screening." *Id*.

"In particular, the inmate must establish (1) that he actually filed a grievance or grievances that, if

pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that

he seeks to pursue in federal court, and (2) that prison officials screened his grievance or

grievances for reasons inconsistent with or unsupported by applicable regulations." *Id*. at 823-24

Plaintiff has not established that officials screened out his grievances or appeal for reasons

inconsistent with the applicable regulations. Log No. CCI-0-1703280 was untimely as the

incident occurred on August 1, 2017, and Plaintiff signed the initial grievance on November 28,

2017--well beyond the applicable 30-day deadline.[7] Officials advised Plaintiff of the untimeliness

finding and cancellation, and indicated any appeal of the cancellation must comply with

regulations, referencing section 3084. *See, e.g.*, UDF Nos. 14-25.

Plaintiff appealed the cancellation in Log No. CCI-0-1801797 but it was also untimely.

UDF Nos. 14, 26-44. The Court concludes that Plaintiff was properly notified and advised

regarding both grievance or appeals submissions and failed to follow the instructions provided

and the relevant guidelines applicable to those submissions. *See, e.g.*, *Catanzarite v. Pierce*, No.

1:12-cv-01502-LJO-SAB (PC), 2015 WL 3774285, at \*13 (June 16, 2015) ("Defendants submit

each of the rejection letters … which sets forth the reasons the grievance was screened-out and

returned to Plaintiff for resubmission. [] In response to such letters, Plaintiff either failed to

correct the deficiency and/or created a new deficiency in the resubmitted grievance"). Simply put,

Plaintiff has failed to establish that prison officials were the cause of his failure to properly

exhaust his administrative remedies.

The PLRA contains a "built-in exception to the exhaustion requirement: A prisoner need

not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 578 U.S. 632, 635-36 (2016). "By

---

[7] The Court notes Plaintiff alleges he was unable to file this grievance before November 28, 2017, because he was in a crisis bed. The record also includes an unrelated grievance submitted by Plaintiff on October 19, 2017—more than a month prior to the initial grievance relevant to this action—undermining Plaintiff's assertion that he was unable to submit a grievance prior to November 28, 2017. *See* Doc. 96-4 at 85-88 (concerning missing or lost property). Because Plaintiff used a pen on October 19, 2017, even had the officials considered October 19, 2017 as a start date (rather than August 1, 2017), Plaintiff's November 28, 2017 grievance would be untimely. It was submitted 40 calendar days after Plaintiff had access to a pen and grievance forms, or 10 days late.

way of a non-exhaustive list, the [Supreme] Court recognized three circumstances in which an administrative remedy was not capable of use to obtain relief despite being officially available to the inmate: (1) when the administrative procedure 'operates as a simple dead end' because officers are 'unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use' because 'no ordinary prisoner can discern or navigate it'; and (3) when prison administrators 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017) (quoting *Ross*, 578 U.S. at 643-44). The Court concludes the CDCR's administrative procedure does not operate as a simple dead end and is not so opaque to be incapable of use. *Id*. at 1078. Plaintiff has also failed to submit sufficient evidence to show prison officials thwarted Plaintiff's ability to take advantage of the grievance process through machination, misrepresentation, or intimidation. *Id*.

In sum, Plaintiff has failed to set forth evidence showing his failure to exhaust administrative remedies should be excused. *See Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). Defendants have met their ultimate burden to show Plaintiff failed to exhaust his administrative remedies prior to filing suit. *Albino,* 747 F.3d at 1172. Therefore, Defendants are entitled to summary judgment. *Celotex*, 477 U.S. at 322-33.

### VII.   CONCLUSION AND ORDER

For the foregoing reasons, Defendants' motion for summary judgment (Doc. 96) is **GRANTED**. Judgment shall be entered in favor of Defendants. Plaintiff's complaint is dismissed without prejudice. The Clerk of the Court is directed to vacate any pending deadlines and to close this case.

IT IS SO ORDERED.

Dated:   **May 21, 2024**                                         /s/ *Sheila K. Oberto*

                                                                    UNITED STATES MAGISTRATE JUDGE